**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK O. KIRWIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. 17-cv-1238 |
| Plaintiff, | CLASS ACTION |
| v. | |
| NORTHERN DYNASTY MINERALS LTD., RONALD W. THIESSEN and MARCHAND SNYMAN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Patrick O. Kirwin ("Plaintiff"), by his attorneys, except for his own acts, which are based on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Northern Dynasty Minerals Ltd. ("Northern Dynasty" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.     This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Northern Dynasty common stock between September 16, 2013 and February 14, 2017, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Northern Dynasty is a Vancouver, British Columbia based company with shareholders around the world, and is publicly traded in Canada and in the United States.

3.      Northern Dynasty's principal asset is the Pebble copper-gold-molybdenum-silver mineral project ("Pebble Project") in southwest Alaska, USA, an advanced-stage initiative to develop one of the world's most important mineral resources.

4.      The Company made materially false and/or misleading statements, misrepresenting the viability of the Pebble Project.

5.      As the truth about the Pebble Project was revealed, the stock price declined from $3.18 per share of Northern Dynasty stock on February 14, 2017, to close at $2.31 per share on, a drop of approximately 27%.

6.      As a result of the fraudulent conduct alleged herein, Plaintiff and other members of the Class purchased Northern Dynasty common stock at artificially inflated prices and suffered significant losses and damages once the truth emerged.

## JURISDICTION AND VENUE

7.      The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.).  This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.

10.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants named herein, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange. Additionally, Defendants named herein, individually and collectively, have sufficient minimum contacts with this District, so as to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice, based on Defendants electing to list Northern Dynasty's common stock on the New York Stock Exchange under the ticker symbol "NAK."

## PARTIES

11.     Plaintiff purchased Northern Dynasty common stock within the Class Period and, as a result, was damaged thereby.  Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

12.     Defendant Northern Dynasty is a Canadian corporation with its principal asset and wholly owned partnership vehicles located in Alaska. Northern Dynasty's common stock trades on the Canadian TSX under the ticker symbol "NDM" and on the United States NYSE under the ticker symbol "NAK."

13.     Defendant Ronald W. Thiessen ("Thiessen") is the Company's President and Chief Executive Officer ("CEO").

14.     Defendant Marchand Snyman ("Snyman") is the Company's Chief Financial Officer ("CFO").

15.     Defendants in Paragraphs 13-14 are collectively referred to herein as the "Individual Defendants."

16.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)     approved or ratified these statements in violation of the federal securities laws.

17.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Northern Dynasty's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at managem87trdent and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

4

18.     As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

19.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Northern Dynasty's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

20.     Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Northern Dynasty securities by

disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Northern Dynasty's business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Northern Dynasty common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A.     COMPANY BACKGROUND

21.     Northern Dynasty was founded in 1983. Northern Dynasty formerly held an interest in a small-scale gold mine in Nevada but frittered its cash flow away on a long series of fruitless exploration programs, both under its old leadership and under the aegis of Hunter Dickinson Inc., a private firm that provides multiple services to companies in the mining sector.  Northern Dynasty remains part of the Hunter Dickinson family to this day, paying it around $5 million a year and drawing most of its key decision-makers from Hunter Dickinson's ranks.

22.     In 2001, Hunter Dickinson acquired options on the Pebble deposit from the large mining company Teck, then known as Teck Cominco and, in a complex series of transactions, ultimately transferred those options to Northern Dynasty.  Over the next several years, Northern Dynasty paid Teck $14 million plus a 4-5% share of potential future mine profits to gain full control over Pebble.

23.     In 2007, Northern Dynasty partnered with Anglo American Pebble LLC ("Anglo") a wholly-owned United States subsidiary of Anglo American PLC, to develop the Pebble Project, through the Pebble Limited Partnership.  Anglo was to supply the partnership with $1.5 billion in funding in exchange for 50% ownership. Anglo invested $573 million before abandoning the project, thereby returning complete ownership to Northern Dynasty.

B.     **MATERIAL MISSTATEMENTS AND OMISSIONS DURING THE CLASS**

**PERIOD**

24.     The Class Period begins on September 16, 2013, when Northern Dynasty issued a

press release filed as a form 6-K with the SEC ("September 16, 2013 Press Release") announcing

that Anglo, withdrew from the Pebble project. The press release stated in relevant part:

> **Anglo American Withdraws from Pebble Project**
> **September 16, 2013, Vancouver, BC** – Northern Dynasty Minerals Ltd. (TSX:
> NDM; NYSE MKT: NAK) ("Northern Dynasty" or the "Company") reports that
> Anglo American (US) Pebble LLC ("AA Pebble"), a wholly owned US subsidiary
> of Anglo American plc ("Anglo American"), has given notice under the Pebble
> limited partnership agreement that it is withdrawing from the Pebble copper project
> in Alaska.
>
> Mark Cutifani, Chief Executive of Anglo American, said: "Despite our belief that
> Pebble is a deposit of rare magnitude and quality, we have taken the decision to
> withdraw following a thorough assessment of Anglo American's extensive pipeline
> of long-dated project options. Our focus has been to prioritise capital to projects
> with the highest value and lowest risks within our portfolio, and reduce the capital
> required to sustain such projects during the pre-approval phases of development as
> part of a more effective, value-driven capital allocation model."
>
> As of June 30, 2013, AA Pebble has funded US$541 million of expenditure on the
> Pebble Project. Following the AA Pebble withdrawal, PLP [Define PLP] will
> proceed under the sole ownership of Northern Dynasty. In light of the parties'
> shared desire to ensure an orderly exit, the detailed aspects of AA Pebble's
> withdrawal from the Pebble project are being developed and implemented.
>
> Northern Dynasty CEO Ron Thiessen commented "***Northern Dynasty will again
> own 100% of one of the world's most important copper & gold resources and will
> have the benefit of $541 million worth of expenditures, which opens the door to
> a number of exciting possibilities for Northern Dynasty and its shareholders and
> the Pebble Project and its stakeholders. Northern Dynasty and the Pebble
> Partnership have both the expertise and resources necessary to advance the
> Pebble Project.***"

25.     On May 21, 2014, Northern Dynasty issued a press release, also attached as exhibit

99.1 to the Form 6-K filed with the SEC ("May 28, 2014 Form 6-K").  The press release was a

letter to shareholders from President and CEO Ronald Thiessen.  The letter stated in part:

For Northern Dynasty, like most companies active in the global mining sector, 2013 was a challenging year. Continued weak market conditions contributed to a host of travails - including flagging share prices, declining capital investment, sluggish M+A activity, divestitures and wholesale senior management changes.

For Northern Dynasty, this translated to our major partner at Pebble - Anglo American plc - walking away from the project last December due to its own capital allocation priorities, despite having invested nearly US$600 million over the previous six years.

Difficult news in a difficult time. But in the same way that the seeds for the next great bull market in mining stocks are being sown by the lack of investment in new projects and new productive capacity today, so too *we believe will Anglo's departure ultimately lead to the next great value opportunity for our shareholders*.

Emphasis added.

26.     On May 15, 2015, the Company filed a Form 20F for the fiscal year ended December 31, 2014 (the "2014 20F") with the SEC, which provided the Company's 2014 financial results and position and stated that the Company's disclosure controls and procedures and internal control over financial reporting were effective were effective as of December 31, 2014. The 2014 20F was signed by Defendant Snyman. The 2014 20F contained signed certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") by Defendants Thiessen and Snyman attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

27.     The 2015 20-F stated the following concerning the Pebble Project:

**B. THE PEBBLE PROJECT**

The Company's business is the exploration and advancement towards feasibility, permitting and ultimately development of a copper gold molybdenum mineral resource in Alaska, USA known as the "Pebble Project".

28.     On May 2, 2016, the Company filed a Form 20F for the fiscal year ended December 31, 2015 (the "2015 20F") with the SEC, which provided the Company's 2015 financial results and position and stated that the Company's disclosure controls and procedures and internal

control over financial reporting were effective were effective as of December 31, 2015. The 2015

20Fwas signed by Defendant Snyman. The 2015 20F contained signed SOX certifications by

Defendants Thiessen and Snyman attesting to the accuracy of financial reporting, the disclosure

of any material changes to the Company's internal control over financial reporting and the

disclosure of all fraud.

29.    The 2015 20F stated the following concerning the Pebble Project:

**B. THE PEBBLE PROJECT**
The Company's business is the exploration and advancement towards feasibility,
permitting and ultimately development of a copper-gold-molybdenum-silver
mineral resource in Alaska, USA known as the "Pebble Project".

30.    On May 16, 2016, Northern Dynasty issued a press release, also attached as Exhibit

99.1 to the Form 6-K filed with the SEC ("May 25, 2016 Form 6-K").  The press release was a

letter to shareholders from Defendant Ronald Thiessen.  The letter stated in relevant part:

**May 16, 2016**

Dear Fellow Shareholder, . . .

For Northern Dynasty, like most companies active in the global mining
sector, 2015 was yet another challenging year. Weak market conditions
prevailed, as exhibited by flagging share prices, declining capital
investment and sluggish M&A activity, as the industry suffered through
the longest bear market in recent memory.
The better news is that the green shoots of recovery appear to be breaking
through. Capital is finally being raised to fund good projects, M&A has
returned, and the mining subsector has enjoyed a strong start to 2016.
Your shares in Northern Dynasty have participated to some extent in this
rally but I believe there is much more potential to reward your patience as
our strategy unfolds.

As you know, Northern Dynasty holds a 100% interest in the Pebble
Limited Partnership (PLP) and the Pebble Project. *Pebble remains among
the most valuable mineral properties ever discovered, including:*
- *6.44 billion tonnes of measured and indicated resources grading
0.40% copper, 0.34 g/t gold, 240 ppm molybdenum and 1.66 g/t
silver containing 57 billion pounds of copper, 70 million ounces
of gold, 3.4 billion pounds of molybdenum and 344 million
ounces of silver; and*

9

- ***4.46 billion tonnes of inferred mineral resources grading 0.25% copper, 0.26 g/t gold, 222 ppm molybdenum and 1.19 g/t silver, containing 24.5 billion pounds of copper, 37 million ounces of gold, 2.2 billion pounds of molybdenum and 170 million ounces of silver.***

***By any measure, Pebble is world class – representing both the largest undeveloped copper resource and the largest undeveloped gold resource in the world.***

More than $USD750 million has been invested to advance the Pebble Project. We have assembled an unparalleled database of environmental science and technical studies to support design and permitting of a world class mine. ***Just one measure of the value of that investment is that replicating the extensive drilling activity completed at Pebble to date would alone cost more than USD $200 million***.

\*          \*          \*

**Overall we continue to make steady and significant progress.** We believe the rule of law in America will prevail, and that Pebble will ultimately be judged by federal and state regulators and the people of Alaska on its scientific merits and on the basis of an *Environmental Impact Statement* – the backbone of an honest permitting process. ***Going forward we are optimistic that the future will be less about protecting your asset and more about advancing it.***

***There are several major milestones that lie ahead, in 2016 and beyond, that I believe offer the prospect of beginning to realize the true potential of the Pebble Project.*** You can be sure that we are working extremely hard to reward the considerable patience of our shareholders and supporters.

Emphasis added.

31.    The statements in paragraphs 23-29 above were materially false and misleading above were false and/or misleading as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose that: (i) The Pebble Project carries a negative net present value; (ii) the Pebble Project is not commercially viable; and (iii) as a result of the foregoing, the Company's financial statements, as well as Defendants' statements about Northern

Dynasty's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

C.    **THE TRUTH EMERGES**

32.    On February 14, 2017, Kerrisdale Capital published a report regarding Northern Dynasty ("Kerrisdale Report") and the Pebble Project, asserting among others, that the project is commercially unviable. The Kerrisdale Report stated in relevant part:

> **<u>The Pebble deposit is not commercially viable.</u>    Though very large, the Pebble deposit is relatively low-grade, meaning that large amounts of raw material would need to be processed to extract small amounts of valuable substances like copper, gold, and molybdenum.    But this processing requires a great deal of infrastructure, and the pristine Bristol Bay region where Pebble is located has almost none.**

> Mining Pebble would thus entail building a large power plant, a deep-water harbor, an 86-mile-long road, an equally long set of pipelines for moving copper concentrate, multiple dams that would rank among the largest on the planet, potentially a floating liquefied natural gas platform, and more – all in a harsh natural environment subject to extremes of temperature and precipitation, not to mention earthquakes.    Though, in the words of one person familiar with Pebble, Northern Dynasty consistently **"tried to underplay the issues," in reality the project was, in the words of another, "pushing the boundaries of engineering.    Actually it's quiet an interesting project due to all the challenges…but from an investment perspective it's obviously risky."**

> **Sure enough, in 2013 Anglo American, Northern Dynasty's former partner, withdrew from the project, walking away from more than $500 million in sunk costs and making no effort to renegotiate the terms of its deal instead of simply exiting.**    Though some Northern Dynasty bulls now assume Anglo's decision stemmed entirely from regulatory concerns that will now abate, Northern Dynasty itself explicitly denied that the EPA had anything to do with it.    Out discussions with people directly involved in the project confirmed that, as one crisply put it, **"Anglo exited because of economics."**

> Anglo personnel viewed Northern Dynasty's economic analyses as unrealistic and overly optimistic, even speculating that concern for the company's stock price was pushing Northern Dynasty management to make short-sighted choices.    **In Anglo's more sober view, Pebble's upfront capital costs would be more than 100% higher than what Northern Dynasty has suggested, while operating costs would be roughly 20% higher.**    These differences amounted to many billions of dollars, which – for a project that Northern Dynasty's own 2011 preliminary assessment

accorded an after-tax NPV of only $4 billion – easily drove the value of the project into negative territory, even before adjusting for its unusual regulatory and reputational risks. *We believe Northern Dynasty knew about Anglo's analysis but suppressed it. As one source told us (and a second source confirmed):*

> *What's interesting is, as we were about to issue our PFS [pre-feasibility study] that we came up [with] in 2012 or so, they [Northern Dynasty] stopped us finishing that PFS. We weren't supposed to issue the report, you see. We were coming up with 13 billion in capital. By contrast, Northern Dynasty's preliminary assessment indicated that Pebble's initial capital costs would be only $4.7 billion.*

In short, one of the world's largest and most experienced mine operators concluded after years of study that the Pebble project was so unlikely to earn its cost of capital that it wasn't worth trying; one former Anglo executive ruefully complained, with hindsight, that "*he would never have touched Pebble at all.*"

\*        \*        \*

While Northern Dynasty attempted to spin Anglo's exit as a signal about Anglo's troubles, not Pebble's, it explicitly shot down the notion that regulatory concerns drove the decision. In response to one worried investor who asked if the company found the timing of Anglo's exit "curious" in light of a recent EPA visit, management responded, "I don't think the EPA's visit to the site had anything to do with it," noting that the visit was "seen by everybody as pretty positive."16 The notion that Anglo withdrew because of the EPA's veto – which hadn't even been set into motion yet – is baseless revisionist history. *As one former Anglo engineer told us, "Anglo exited because of economics."*

Notwithstanding Northern Dynasty's protests, investors clearly took Anglo's exit as a shockingly negative message about Pebble; the project's implied value fell by ~70% over the days following the announcement. To better understand Anglo's decisions, we spoke with multiple engineers and others directly involved in planning the Pebble project. What they told us confirmed what reasonable investors had already concluded back in 2013: key Anglo personnel came to view Pebble as fundamentally flawed and unworkable, with capital and perating costs far in excess of what Northern Dynasty hoped for. In fact, engineers working on the project kept finding, after considering a wide range of possible mine designs over a period of years, that Pebble's *net present value was negative, to the tune of multiple billions of dollars – all while assuming long-term metal prices that exceed prices today. Of course, using lower prices would generate an even more negative NPV, making investing in Pebble look like an even worse idea. Strikingly, two sources told us that, while Anglo's final analysis of the project was effectively complete by 2013, Northern Dynasty insisted that it be terminated prematurely and not officially presented to the Pebble Partnership's highest-ranking leaders. Why?*

> ***Based on our discussions, Anglo personnel believed that Northern Dynasty wanted to avoid disclosure requirements under***
> ***Canadian securities law. In other words, according to people directly involved in the Pebble project, Northern Dynasty knew that the Anglo analysis had found that Pebble was worse than worthless but did everything it could to keep that information out of shareholders' hands. How could it be that such a large mineral deposit isn't worth mining? The answer is as simple as the analysis was complex: cost. As one person involved with Pebble put it, That thing is big. It's a massive area. Everything on Pebble was done on a grand scale. I've never seen a mine like that.…The Pebble project was pushing the boundaries of engineering.***

Emphasis added.

33.    On the release of the report, the stock price declined from $3.18 per share of Northern Dynasty stock on February 14, 2017, to close at $2.31 per share, a drop of approximately 27%.

### D.    ADDITIONAL SCIENTER ALLEGATIONS

34.    As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Northern Dynasty, their control over, and/or receipt and/or modification of Northern Dynasty's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Northern Dynasty, participated in the fraudulent scheme alleged herein.

**E.**    **LOSS CAUSATION AND ECONOMIC LOSS**

35.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Northern Dynasty's misconduct was revealed, the value of the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Northern Dynasty's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

36.    At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members.  Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Northern Dynasty's business, operations and financial condition, as alleged herein.  Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Northern Dynasty's common stock to be artificially

inflated.  Plaintiff and other Class members purchased Northern Dynasty's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

F.   **PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET**

37.   At all relevant times, the market for Northern Dynasty securities was an efficient market for the following reasons, among others:

(a)   Northern Dynasty's common stock met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient market;

(b)   During the Class Period, Northern Dynasty securities were actively traded, demonstrating a strong presumption of an efficient market;

(c)   As a regulated issuer, Northern Dynasty filed with the SEC periodic public reports during the Class Period;

(d)   Northern Dynasty regularly communicated with public investors via established market communication mechanisms;

(e)   Northern Dynasty was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f)   Unexpected material news about Northern Dynasty was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

38.   As a result of the foregoing, the market for Northern Dynasty securities promptly digested current information regarding Northern Dynasty from all publicly available sources and reflected such information in Northern Dynasty's stock price.  Under these circumstances, all purchasers of Northern Dynasty common stock during the Class Period suffered similar injury through

their purchase of Northern Dynasty's common stock at artificially inflated prices, and a presumption of reliance applies.

39.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures.  Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.  Here, the facts withheld are material because an investor would have considered the Company's true net losses and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Northern Dynasty.

## G.    NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

41.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

42.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Northern Dynasty who knew that the "forward-looking statement" was false.   Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection,

or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Northern Dynasty common stock on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Northern Dynasty securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Northern Dynasty or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of September 30, 2016, Northern Dynasty had approximately 264.6 million common shares outstanding. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world.  Joinder would be highly impracticable.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in

violation of the federal laws complained of herein.

46.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b)     whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c)     whether the price of Northern Dynasty common stock during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Northern Dynasty common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

51.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Northern Dynasty securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Northern Dynasty as specified herein.

53.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Northern Dynasty's value and

performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Northern Dynasty and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Northern Dynasty common stock during the Class Period.

54.    Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

55.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing Northern Dynasty's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by Defendants' throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Northern Dynasty's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Northern Dynasty' publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Northern Dynasty common stock during the Class Period at artificially high prices and were or will be damaged thereby.

57.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Northern Dynasty's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Northern Dynasty common stock, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

58.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

59.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

60.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

<u>**COUNT II**</u>

***<u>The Individual Defendants Violated Section 20(a) of the Exchange Act</u>***

61.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.    The Individual Defendants acted as controlling persons of Northern Dynasty within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

63.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

64.    As set forth above, Northern Dynasty, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

65.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

66.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)    Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred

in this action, including counsel fees and expert fees;

(d)     Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: February 17, 2017                          /s/ Adam M. Apton

                                                  **LEVI & KORSINSKY, LLP**
                                                  Nicholas I. Porritt
                                                  Adam M. Apton
                                                  30 Broad Street, 24th Floor
                                                  New York, NY 10004
                                                  Tel: (212) 363-7500
                                                  Fax: (212) 363-7171
                                                  Email: nporritt@zlk.com
                                                  Email: aapton@zlk.com